## IN THE OREGON TAX COURT

Francisco A. dela ROSA
*v.*
DEPARTMENT OF REVENUE
(TC 2749)

Plaintiff appeared *pro se.*

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered February 16, 1989.

**CARL N. BYERS, Judge.**

Plaintiff contests liability for any income taxes during the years 1981 through 1983. Defendant, in its Opinion and Order, determined that plaintiff was domiciled in Oregon and, therefore, subject to tax.

Plaintiff and his wife were originally from the Philippines but had emigrated to Canada in 1970. In July 1971 plaintiff, with his wife and two children, moved to Oregon.

The reason for moving was to enable plaintiff's wife, who is a registered nurse, to obtain employment. Plaintiff is an electrical engineer. Plaintiff worked at less than satisfactory jobs until 1973 when he was hired by a firm headquartered in Kansas City. As an employee of that firm he worked approximately two years on the Portland airport. In 1976, plaintiff was transferred to Kansas City as a permanent employee. In that same year, he became a United States citizen. In 1977, he was sent to Alabama to supervise a major construction project. Plaintiff moved his family to Alabama and purchased a home there. Plaintiff tried but was unable to sell the family home in Portland. In 1979, plaintiff was sent to work in Brownsville, Texas, but his family remained in Alabama. Later in 1979, plaintiff was assigned to work on a project in Wyoming. Plaintiff and his wife decided that was a good time to move the family back to Oregon. Alabama had not been a satisfactory place for his family since his wife was unable to earn an acceptable income there and she also suffered from allergies. Accordingly, plaintiff and his wife sold their home in Alabama and moved back into their home in Portland. Later, they purchased another home in Portland as a personal residence which was closer to school for their children.

Plaintiff worked in Wyoming most of 1980 and 1981. His employer furnished him airline tickets to travel to see his family, which he did about every six weeks. In December 1981, plaintiff resigned from his job with the Kansas City firm in order to find a job closer to his family. He obtained employment in the State of Washington and worked there until he was laid off in March 1983. Plaintiff was in Oregon, unemployed, from March until September 1983. In September 1983, plaintiff took a job with a company in Clinton, Illinois, although his family remained in Oregon. Plaintiff worked in Illinois until 1985 when he resigned in order to return to Oregon.

ORS chapter 316 imposes a personal income tax on Oregon "residents." ORS 316.027 defines a resident of this state as follows:

"(a)   An individual who is domiciled in this state unless he
(A) maintains no permanent place of abode in this state, and
(B) does maintain a permanent place of abode elsewhere, and
(C) spends in the aggregate not more than 30 days in the taxable year in this state; or

"(b)  An individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable year in this state is presumed to be a resident unless he proves that he is in the state only for a temporary or transitory purpose."

■ ■    Under this statute the initial determination that must be made is whether an individual is domiciled in Oregon. In layman's terms, the concept of domicile is a person's "home." In attempting to be more precise, the law has determined that in order for an individual to establish domicile, the person must have both " 'a fixed habitation or abode in a particular place, and an intention to remain there permanently or indefinitely; * * *.' " *Elwert v. Elwert,* 196 Or 256, 265, 248 P2d 847 (1952). The concept of domicile carries with it the notion that it is the place to which a person intends to return whenever absent therefrom. *Miller v. Miller,* 67 Or 359, 136 P 15 (1913). Finally, it should be noted:

"A man can have but one domicile for one and the same purpose at any one time, though he may have numerous places of residence." *Reed's Will,* 48 Or 500, 508, 87 P 763 (1906).

In attempting to ascertain an individual's domicile, the element of intent must be inferred from the circumstances or the person's activities. After reviewing the evidence in this case, there can be no doubt that during the three years in question plaintiff was domiciled in Oregon. Plaintiff owned real property here and maintained an Oregon driver's license. Although plaintiff's real estate license had expired while he was out of state, he took the state examination and renewed his license in 1983. Plaintiff filed joint Oregon income tax returns with his wife. It was the use of improper forms and reporting different income on the attached federal income return which prompted the audit in this case. The audit discovered that plaintiff had claimed "away-from-home expenses" on his federal return for expenses incurred while he was working in Wyoming and Washington. Since plaintiff accepted sole responsibility for preparation of the income tax returns, this would indicate a belief on his part that his "home" was in Portland, Oregon, rather than in Wyoming or Washington. When the court asked plaintiff why he did not claim his wife's living expenses as away-from-home expenses, plaintiff responded "that's a good question." Unfortunately, plaintiff was unable to give a good answer.

Plaintiff had no permanent home outside Oregon after 1979. Plaintiff did not own property in Wyoming or Washington. He failed to bring forth any convincing evidence that would support his claim of domicile outside Oregon. It is significant that plaintiff resigned his job in 1981 in order to be near his family. Further, he admitted that during all of the years in question he was always looking for a job in Oregon.

By his testimony, plaintiff appeared to feel that somehow he should be excused from taxation if circumstances compelled his family to live in Oregon. The reasons people choose to live in one area or another do not change the fact that they do live there. His wife's allergies and employment made Oregon a desirable place for her and the family to reside. That, in turn, made Oregon a desirable place for plaintiff to reside. Plaintiff's love and loyalty to his family does not relieve him of liability for taxes. To the contrary, if plaintiff's family enjoys the benefits of living in the State of Oregon, it would seem appropriate for him, as head of the house, to pay income taxes here.

Having determined that plaintiff was domiciled in Oregon, the next question is: did he meet the conditions of ORS 316.027(a) which would excuse him from paying tax in Oregon? The statute requires the individual to meet all three conditions in order to avoid taxation. Plaintiff did not meet all of the requirements. The court finds that plaintiff maintained a "permanent place of abode" in the state by virtue of owning real property where his family resided and to which he returned whenever he was not working elsewhere. Plaintiff may have met the condition that he maintain a permanent place of abode outside Oregon. *Ramsey v. Dept. of Rev.,* 7 OTR 478 (1978). The court finds that plaintiff did spend more than 30 days in Oregon during the years 1982 and 1983. In fact, in 1983 plaintiff lived in Oregon from March through September and drew unemployment compensation. The evidence is not clear as to whether plaintiff spent more than 30 days in Oregon in 1981.

The court finds that plaintiff was a resident of Oregon during 1981 through 1983 as defined by ORS 316.027. Therefore, the income plaintiff earned in other states is taxable by Oregon.

The secondary issues raised by defendant in this case is whether plaintiff has preserved his appeal rights. For the years 1981 and 1983, defendant dismissed plaintiff's appeals because he did not appeal timely as required by the statutes. For the year 1982, defendant found that plaintiff did appeal timely and gave plaintiff an opportunity to substantiate his claimed away-from-home expenses. At the hearing on this latter issue, plaintiff declined to provide that substantiation and maintained that he was not taxable in Oregon.

Plaintiff explained that he misunderstood the appeal process. He believed that once defendant had made a decision to assess his taxes, that was final and he needed to wait to get to another forum. He held this belief despite clear instructions and correspondence to the contrary. Plaintiff's belief that he understood the appeal procedures, contrary to instructions, caused him to go to extreme lengths. For example, in 1981 and 1982 plaintiff attached copies of his federal income tax returns to the Oregon income tax returns. The federal returns included plaintiff's out-of-state earnings and, therefore, showed a greater income than reported on the state return. It was this disparity which caused the state to audit his returns. However, in 1983 Oregon modified its return form so that it specifically instructed the taxpayer to enter on the Oregon return the amount of the adjusted gross income found on "Federal Form 1040, line 32." This clear instruction apparently left plaintiff in a quandary. In order to avoid reporting his out-of-state earnings in Oregon, plaintiff completed and attached a federal return that showed only the income earned in Oregon. However, in order to comply with federal law he actually filed a federal income tax return which included his out-of-state earnings as well as the Oregon income. Plaintiff explained that this was the only way he could figure out to avoid reporting his income in Oregon. In order to do so, however, he had to violate other instructions and common reasoning.

It is difficult to understand how plaintiff could have failed to understand the administrative appeal procedures. Plaintiff is a college graduate with a degree in electrical engineering. He has acted as a general electrical contractor as well as being employed as an electrical engineer on large projects. Moreover, plaintiff has taken and passed the Oregon examination to become a licensed real estate salesman. Both

of those professions require complying with the laws and following instructions. The court cannot understand why taxpayers ignore instructions. Taxpayers who ignore tax instructions, or fail to obtain professional assistance when they feel they are unable to comply with those instructions, do so at their peril. Plaintiff's failure to comply with the statutory procedures as communicated to him by the defendant in the administration of the tax laws, deprived him of having his appeals considered on the merits. Defendant's Opinion and Order No. 86-0405 is hereby sustained. Judgment will be entered consistent with this opinion.

Costs to neither party.